Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6190 | **DATE** | 10/28/2004 |
| **CASE TITLE** | Michelle Barnes vs. JoAnne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Plaintiff's Motion for Summary Judgment [8-1] is denied and Defendant's Cross-Motion for Summary Judgment [18-1] is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE BARNES, on behalf of )
ALEXIS and ALEXANDRIA BARNES, )
)
Plaintiffs, )
)
v. ) No. 03 C 6190
) Judge Ronald A. Guzmán
JO ANNE BARNHART, COMMISSIONER )
OF SOCIAL SECURITY, )
)
Defendant. )

DOCKETED
NOV 1 2004

## MEMORANDUM OPINION AND ORDER

Michelle Barnes filed this suit seeking judicial review of a final decision of the Commissioner of Social Security denying her twin daughters survivor's benefits on the earnings record of Ronald Lewis. Both parties have filed motions for summary judgment. For the reasons set forth below, the Commissioner's motion is granted and plaintiff's motion is denied.

### Factual Background

According to plaintiff, she and Ronald Lewis, the deceased wage-earner, met in September 1986 in Prescott, Arizona. (R. at 381-82.) At the time, plaintiff was living with her father, Lester Barnes, and Ronald was attending Embry Riddle Aeronautic College. (Id.) Plaintiff and Ronald began dating, and in March 1987, plaintiff and her infant daughter Tiffany moved into Ronald's apartment. (Id. at 162-64, 381-84.)

In July 1987, plaintiff discovered that she was pregnant. (Id. at 385-86.) When Ronald's parents heard the news, plaintiff says, they threatened to stop supporting Ronald financially if plaintiff did not move out of his apartment. (Id. at 388-89.) As a result, plaintiff moved back to her father's home. (Id. at 389.) Shortly thereafter, her father sent her to South Carolina to live with her mother. (Id. at 389-90.) On March 16, 1988, plaintiff gave birth to twin girls. (Id. at 69-70.)

While plaintiff was in South Carolina, Ronald left Arizona and moved to Chicago. (Id. at 391.) In 1990, Ronald committed suicide in Calumet City, Illinois. (Id. at 71, 121.)

## Procedural Background

In 1991, plaintiff filed her first application for survivor's benefits, which the Commissioner denied. (Id. at 453-54.) She filed a second application in December 1994, which was also denied. (Id. at 46-48, 51-52.) Plaintiff filed a request for reconsideration, but no reconsideration decision was ever rendered. (Id. at 53-54, 100-01.) On September 27, 1995, plaintiff filed a request for rehearing. (Id. at 61.)

On October 18, 1996, ALJ Allyn Brooks denied the request for rehearing and remanded the claim for a reconsideration determination. (Id. at 98-101.) On November 28, 1996, a reconsideration decision was issued, denying benefits. (Id. at 102-07.)

Plaintiff filed a request for a hearing, which was held by ALJ Steven H. Templin on June 19, 1998. (Id. at 12-18.) On January 29, 1999, he issued a decision denying benefits. (Id. at 12-37.) On September 28, 2000, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Id. at 3-4.) Plaintiff sought judicial review of that decision in this Court.

The case was referred to Magistrate Judge Levin, who recommended that it be remanded for further proceedings because the ALJ failed to: (1) make an explicit credibility determination about plaintiff's testimony; (2) subpoena certain telephone records that might corroborate her testimony; and (3) articulate his reasons for rejecting the affidavit of Robin Mendenhall. (Id. at 566-76.) The district judge accepted the recommendation and judgment was entered for plaintiff on November 7, 2001. (Id. at 584.)

On May 1, 2002, the Appeals Council vacated ALJ Templin's January 1999 decision and remanded the case to him for further proceedings. (Id. at 607-08.) The ALJ received further evidence, and on June 13, 2003, he issued a second decision denying benefits. (Id. at 356F-P.) Plaintiff now seeks review of that decision.

## Discussion

The Social Security Act permits judicial review of the Commissioner's final decisions. 42 U.S.C. § 405(g). That review is limited, however, to determining whether the Commissioner's findings of fact are "supported by substantial evidence." Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002) (internal quotation marks and citation omitted).

To obtain survivor's benefits for the twins, plaintiff had to prove that they were Ronald Lewis' children. See 42 U.S.C. § 402(d)(1). The method she chose to do so was by establishing that her daughters could inherit Ronald's property through Illinois' laws of intestacy. See 42 U.S.C. § 416(h)(2)(A) ("In determining whether an applicant is the child . . . of a fully or currently insured individual . . . , the Commissioner of Social Security shall apply such law as would be applied in

determining the devolution of intestate personal property by the courts of the State in which such insured individual . . . was domiciled at the time of his death."); (R. at 71 (death certificate stating that Ronald died in Calumet City, Illinois).) Under Illinois law, a child born out of wedlock can inherit her father's property if the father acknowledged paternity during his lifetime or paternity was established by a court after his death. 755 ILL. COMP. STAT. 5/2-2. In posthumous paternity cases, the fact of paternity must be proved by clear and convincing evidence. Id. Clear and convincing evidence is "more than a preponderance" but less than beyond a reasonable doubt. Binion ex rel. Binion v. Chater, 108 F.3d 780, 783 (7th Cir. 1997) (internal quotation marks and citation omitted).

## Discussion

ALJ Templin found that plaintiff did not establish by clear and convincing evidence that Ronald Lewis acknowledged paternity of her twin daughters. (R. at 356P.) Plaintiff says that finding is erroneous because there is evidence that Ronald acknowledged paternity to: (1) her father; (2) his parents; (3) her friend, Robin Mendenhall; and (4) a woman who occasionally baby-sat plaintiff's eldest daughter, Robin Jones.

According to plaintiff, the first two admissions occurred almost simultaneously. Once she realized she was pregnant, plaintiff says she and Ronald told her father, Lester Barnes. (Id. at 387.) Immediately after they told him, Lester testified, he called Ronald's parents in Chicago and discussed the situation with them. (Id. at 444-46.) At some point, Lester gave the telephone to Ronald, who told his parents that plaintiff was going to have his baby. (Id. at 448.) Lester said that phone call was "lengthy" and took place on a weekday. (Id. at 444, 447, 495-96, 512.)

However, Ronald's parents, William and Anne Lewis, denied receiving any telephone call from Lester, let alone a lengthy one (id. at 404-08, 418, 425-27), a claim that is supported by Lester's telephone records. (Id. at 95 (showing that only one, one-minute call was made from Lester's home to the Lewises' home on a weekday in the summer of 1987).) Moreover, both of them testified that Ronald never told them that he was the father of plaintiff's twin girls. (Id. at 409, 430.)

Unfortunately for plaintiff, ALJ Templin explicitly found the Lewises' version of events more credible than the Barneses' version. (Id. at 356P.) Though this Court may have reached a different conclusion, those credibility determinations, which are supported by evidence in the record, cannot be disturbed. See Schmidt v. Apfel, 201 F.3d 970, 972 (7th Cir. 2000) (stating that court "must examine the entire record, but . . . cannot reweigh the evidence or substitute [its] judgment for that of the ALJ").

That leaves the statements of Robin Mendenhall and Robin Jones, both of which the ALJ rejected because they were inconsistent with other evidence in the record. (Id. at 356O-P.) Plaintiff says the inconsistencies the ALJ noted are illusory, and thus, his credibility findings are baseless. Because these credibility determinations are based on "objective factors [and] fundamental implausibilities rather than subjective considerations," we have wider latitude in reviewing them. Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994).

In her statement, Jones says that she baby-sat for plaintiff's eldest daughter in 1987 and knew at that time that plaintiff and Ronald were dating. (R. at 639.) At some point during that year, plaintiff told Jones that she was pregnant. (Id.) Though Jones lost touch with plaintiff shortly thereafter, Jones said she sometimes saw Ronald at the Sears store where he worked. (Id.)

On one of those occasions, when Jones asked about plaintiff's pregnancy, Ronald told her he was excited about having a child. (Id.) On another occasion, Jones says, Ronald showed her a picture of "[his] girls." (Id.)

The ALJ found Jones' statement unbelievable because it was made more than fifteen years after the events recounted and was contradicted by other evidence in the case. (Id. at 3560.) Specifically, the ALJ said, Ronald could not have shown Jones a picture of the twins because plaintiff testified that she sent the picture to him after he had left Arizona and moved to Chicago. (Id.) Plaintiff does not address the substantial time lapse, but contends that the Lewises' testimony establishes that Ronald left Arizona for Chicago in 1988, but returned in 1989 to finish his education.

The Court disagrees. Though Ronald's parents testified that he began his college program, which required him to attend for three years, take a semester off, and then return for two more years, in the fall of 1985, they also testified that he quit school after the first three years. (Id. at 407-08, 435-36.) There is no evidence, testimonial or otherwise, that Ronald returned to Arizona after the spring of 1988. Because the twins were born that spring (id. at 69-70), plaintiff testified that she sent their newborn pictures to Ronald in Chicago (id. at 391) and Ronald never returned to Arizona after their birth, Ronald could not possibly have shown the girls' pictures to Jones in Arizona. Like the ALJ, this Court finds that inconsistency fatal to the credibility of Jones' statement.

The situation is different for the Mendenhall affidavit. Mendenhall says she has "known [plaintiff] for many years," saw plaintiff and Ronald periodically from 1986 through the summer of 1987 and spent time at their apartment "off of Gurley street." (Id. at 81.) On one such occasion in the summer of 1987, Mendenhall says, Ronald and plaintiff told her that plaintiff was expecting his baby. (Id.) The next time Mendenhall saw plaintiff was "[a]pproximately two years later" when

-6-

plaintiff told her that she had had twins who were then "approximately 1 year old." (Id.) The ALJ rejected this affidavit: (1) as inconsistent with "the duration of human gestation and numbers of children"; (2) because the record established that the apartment Ronald and plaintiff shared was on Gurley street, not off of Gurley street; and (3) because the twins would have been more than one year old in the summer of 1989. (Id. at 356O.)

The Court agrees with plaintiff that the inconsistencies identified by the ALJ are not a sufficient basis for rejecting the affidavit. Given the twins' undisputed birth date, March 16, 1988, and the nine-month period of human gestation, plaintiff would have had to be pregnant in the summer of 1987, as Mendenhall reports. Moreover, as there is no evidence to suggest that plaintiff and Ronald knew in the summer of 1987 that plaintiff was carrying two babies rather than one, the fact that they told Mendenhall they were expecting "a baby" is not suspect. Similarly innocuous is Mendenhall's reference to Ronald and plaintiff's apartment being *off of* Gurley street rather than *on* it. Finally, though the twins were slightly more than a year old in the summer of 1989, the fact that Mendenhall reported their age as "approximately 1 year old" at that time does not suggest that she was lying. In short, none of the problems the ALJ highlighted, either singly or in combination, justifies his rejection of the Mendenhall affidavit.

Our resurrection of the Mendenhall affidavit does plaintiff little good, however, because that affidavit is the only evidence plaintiff has that Ronald acknowledged paternity of the twins. In light of Mendenhall's longstanding relationship with plaintiff, the seven-year lapse between the events she describes and her affidavit, the evidence that Ronald never told his parents about the twins, did not identify them as beneficiaries of his employee benefits (id. at 467), and never contacted or

supported the girls (id. at 454-57), Mendenhall's affidavit, by itself, is not clear and convincing evidence that Ronald acknowledged paternity.

Even if the Mendenhall affidavit does not prove that Ronald acknowledged paternity, plaintiff contends that, in combination with other record evidence, it establishes clearly and convincingly that he was the twins' father. Certainly, there is evidence that suggests paternity, including: (1) plaintiff's testimony that she was in a sexual relationship with Ronald, and only Ronald, when she became pregnant in the summer of 1987 (id. at 386); (2) the lease agreement Ronald signed for an apartment in Prescott, Arizona in March 1987 that lists plaintiff and her eldest daughter as additional occupants (id. at 162-64); (3) Lester Barnes' testimony that plaintiff moved out of his home and into Ronald's apartment before she became pregnant (id. at 443-44); (4) a letter plaintiff wrote to her great grandmother in May 1987, saying she had "moved in with [her] boyfriend Ron Lewis" (id. at 543-44); (5) plaintiff's 1989 statement to the Arizona Department of Economic Security that the twins' father was Ronald Lewis (id. at 67); and (6) the affidavit of Joseph Walker, one of Ronald's former roommates, which states that he knew plaintiff and Ronald were having a sexual relationship in the spring of 1987 (id. at 201).

The pivotal piece of this evidentiary mosaic is plaintiff's testimony that Ronald was the only man with whom she had sex during the spring of 1987. Though the ALJ characterized plaintiff's "belief concerning her sexual relations with [Ronald]" as "sincere," (id. at 356J), he ultimately deemed her testimony on that point incredible. (Id. at 356P.) Plaintiff says there was no basis for that finding and urges us to reject it.

It is true, as plaintiff notes, that the ALJ was offered no evidence to refute her claim that she had only one sex partner at the relevant time. But the ALJ did not reject her assertion because a

-8-

parade of men contradicted it. He rejected it because he found her testimony, as a whole, incredible. There were too many discrepancies, the ALJ thought, between plaintiff's testimony, the documents in the case and plaintiff's prior statements. (See id. at 356H-K.) While some of the discrepancies he notes seem more perceived than real, the record does contain evidence of troubling contradictions. (Compare, e.g., id. at 194 (record of the South Carolina welfare agency stating that plaintiff said the pregnancy was unplanned) with id. at 386-87 (plaintiff's hearing testimony that she and Ronald planned the pregnancy); id. at 72 (Child Relationship Statement submitted by plaintiff to Social Security Administration in July 1991 stating that she was unaware of any oral admissions of paternity made by Ronald) with id. at 387-88 (her hearing testimony that Ronald told his parents about the baby); id. at 393-94 (her hearing testimony that she telephoned Ronald in Chicago several times from her father's house in the summer or fall of 1989) with id. at 284-98 (Lester Barnes' telephone bills for the relevant period, which show no calls to Illinois); id. at 385-86 (plaintiff's hearing testimony that she did not have sex with Ronald until she moved into his apartment in spring 1987) with id. at 201 (the statement of Joseph Walker, Ronald Lewis' former roommate, that the sexual relationship began before Ronald and plaintiff shared an apartment).) These inconsistencies could be innocent mistakes, or they could be deliberate fabrications. The ALJ decided it was the latter, a decision that was uniquely within his province to make. See Herron, 19 F.3d at 335 ("Since the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong."). Accordingly, we will not disturb the ALJ's determination that plaintiff's testimony about her sexual history is incredible.

Absent credible evidence that Ronald was her only sexual partner in early 1987, plaintiff's mosaic of paternity evidence crumbles. Thus, the Court agrees with the ALJ that plaintiff has not established by clear and convincing evidence that the twins are Ronald Lewis' children who are entitled to survivor's benefits under the Act.[1] The Commissioner's decision is, therefore, affirmed.

### Conclusion

For the reasons set forth above, there is no genuine issue of material fact on plaintiff's claim against defendant and defendant is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is, therefore, denied and defendant's cross-motion for summary judgment is granted. This is a final and appealable order.

**SO ORDERED.**  **ENTERED:**

HON. RONALD A. GUZMAN
UNITED STATES DISTRICT JUDGE

---

[1] We also find no error in the ALJ's refusal to hold a supplemental hearing when the case was remanded. The record shows that plaintiff's counsel told ALJ Templin that a hearing would be necessary only if he was "going to reject the affidavits [of Mendenhall and Jones] as sufficient evidence that Ronald Lewis is the father of Alexandria and Alexis Barnes, because they are in affidavit form." (R. at 635.) The ALJ agreed to accept the evidence in affidavit form, as plaintiff's counsel requested. (Id. at 636.) Thus, plaintiff waived any objection she may have had to the ALJ's proceeding without a hearing.